952 So.2d 762 (2007)
Heydie K. SCIACCA, M.D.
v.
Peter Butler IVES, Jr. & Gillian Lindsey Joy Hanson.
No. 2006-CA-1082.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 2007.
*763 James D. Bercaw, M. Tereze Matta, King, Leblanc & Bland, P.L.L.C., New Orleans, LA, for Plaintiff/Appellant.
Peter Butler Ives, Jr., New Orleans, LA, in Proper Person/Appellee.
(Court Composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, and Judge MAX N. TOBIAS, JR.).
MAX N. TOBIAS, JR., Judge.
This case arises from an action for recision of lease and eviction brought by Heydie K. Sciacca, M.D. ("Dr. Sciacca") against Peter Butler Ives, Jr. ("Ives") and Gillian Lindsey Joy Hansen ("Hanson")[1], who rented an apartment from Dr. Sciacca at 3219 Prytania Street in New Orleans[2] in August 2005. Dr. Sciacca, Ives and Hanson executed a lease agreement on 31 July 2005 for a term of one year, with occupancy to begin on 1 August 2005. Hurricane Katrina struck New Orleans on 28 August 2005. Although the apartment was undamaged by the hurricane, the city was closed to residents until 28 September 2005.
Dr. Sciacca asserts that following Hurricane Katrina, Ives and Hanson violated the lease agreement by failing to pay rent for the months of September, October, and November 2005.[3] Dr. Sciacca filed a petition to rescind the lease and to evict Ives and Hanson on 4 November 2005. In her petition, she prayed for rent for the months of October and November 2005 in the amount of $2,700.00, attorneys' fees in the amount of $675.00, and pre- and post-judgment interest and costs. The trial court set a rule to show cause on the eviction proceeding for 14 November 2005. The hearing was ultimately held on 14 March 2006, and Dr. Sciacca and Ives appeared to testify.[4]
The lease agreement was admitted into evidence, and besides the signatures of the parties to the lease (Dr. Sciacca, Ives, and Hanson) and a third party witness, it bore numerous handwritten marks, amendments, and initials. Dr. Sciacca testified that all of the handwritten notations on the lease were present when the lease agreement was executed, except for the handwritten provisions that required the rent to be paid in one check by the "guarantor" and a provision that permitted Ives and Hanson to paint the apartment using only *764 pastel paint. However, Dr. Sciacca testified that she was not seeking to enforce any handwritten provisions on the lease agreement, and that the post-signing amendments to the lease were agreed to by the parties. In particular, Dr. Sciacca maintained that she was not seeking to enforce the "one check" provision. However, Dr. Sciacca does seek to enforce a provision in the lease that renders "the obligations of all Lessees . . . in solido."
Pursuant to the lease agreement, the monthly rental for the apartment was $1,250.00 if paid by the first of the month, and $1,350.00 if paid after the first but before the third of the month. The lease also provided:
Should the Lessee at any time violate any of the conditions or provisions of this lease, or should Lessee abandon the premises (it being agreed that an absence of Lessee from the leased premises for five consecutive days after rentals have become delinquent shall create a conclusive presumption of abandonment), or the Lessee fail to pay the rent or any part thereof, or any other charges arising under this lease promptly as stipulated,. . . . Similarly, in the event of any such default, Lessor retains the option to cancel the lease and obtain premises in accordance with the provisions of Articles 4701-4705 of the Louisiana Code of Civil Procedure. In the event of such cancellation and eviction, Lessee is obligated to pay any and all rent due and owing through the last day said premises are occupied.
The lease further provides that in the event the lessor had to hire an attorney-at-law to enforce her rights under the lease agreement, the lessee would pay attorneys' fees of 25% of the amount of rent claimed by the lessor, or $300.00, whichever was greater. Dr. Sciacca testified that Hanson and Ives signed the lease agreement, with Ives being the "guarantor."
Dr. Sciacca testified that she gave both Hanson and Ives two keys to the front door, as well as keys to the back door. She recounted that after Hurricane Katrina, she entered the apartment with her insurance adjuster to look for any possible damage. When she entered the apartment, only one lock was engaged to the front door. She testified that she locked the apartment after leaving with her insurance adjustor. On 4 October 2005, Dr. Sciacca went to Puerto Rico for a family wedding, returning around 10 October 2005.
Dr. Sciacca issued a "Notice to Vacate" to Hanson and Ives on or about 26 October 2005. The notice, which was entered into evidence, ordered Ives and Hanson to vacate the apartment within five days and was signed by Dr. Sciacca. The notice mentions a number of violations of the lease, including breaking windows, continually disturbing neighbors, keeping a dog on the premises, and failing to pay rent since July 2005.
Ives evacuated New Orleans as Hurricane Katrina approached the city on 27 August 2005. Ives testified that he returned to New Orleans on or around 5 September 2005, but was unable to enter the apartment due to the deadbolt lock on the front door for which he had no key. He learned that Hanson had no plans to return to New Orleans following the storm, and she sent him a check for her portion of the October rent, as well as several keys, none of which opened the deadbolt lock. Ives returned to New Orleans several times, and finally, approximately three and one-half weeks later, he broke a window to enter the apartment.[5] *765 Ives testified that he had attempted to reach Dr. Sciacca, but that she did not return his calls until sometime around 12 October 2005. He claims that she advised him that she intended to charge him for the ruined refrigerator in the apartment, but that she would release him from the lease if he so desired because she wanted to be able to charge a higher rent. Ives testified that he was unsure as to how to proceed with Dr. Sciacca in light of her demands for him to replace the refrigerator, and he found another apartment and moved in the beginning of November 2005. Further, he received a "Notice to Vacate" from Dr. Sciacca dated 25 October 2005, advising him to leave the apartment within five days of delivery of the notice.
Ives testified that when he took possession of the apartment in August, Dr. Sciacca only gave him one key to the front door, although there were two locks on the door. Further, when he moved his furniture into the apartment, he had to arrange for Dr. Sciacca to open the gate to access the back of the property, because his furniture would not fit through the front door. He testified that Dr. Sciacca was aware that he did not have a key to the back gate or back door, but that she refused to leave the gate open for him. As a consequence, he was unable to move his furniture out of the apartment until late November 2005.
Ives admitted under cross-examination that his personal check written in the amount of $650.00 on 24 July 2005 as his portion of the security deposit was returned to Dr. Sciacca for insufficient funds.[6] Ives asked her on 25 October 2005, via a handwritten note that was entered into evidence, to re-deposit the 24 July 2005 check as his portion of the rent for the month of October, and if she was unwilling to do so, he requested that she return the check. However, Dr. Sciacca advised him that she had already voided the check and would require a new one from him. Ives admitted that he never paid any rent for the month of November, and he never gave Dr. Sciacca another check for the October rent.
The trial court issued judgment on 10 April 2006 in favor of Dr. Sciacca, finding that Ives owed her $90.00 for the month of September and one-half of the rent for October, or $675.00. The court found that because Ives did not have access to the apartment to remove his furniture in the month of November, he did not owe any rent for that month. The trial court further awarded attorneys' fees in the amount of $191.25, as well as costs.
Dr. Sciacca appealed, asserting that the trial court committed three errors: First, the trial court erred as a matter of law in awarding damages of only one-half of the rent against Ives when the lease provided that the rent obligation was a solidary one with Hanson. Second, she asserts that the trial court erred as a matter of law in refusing to award any rent for the month of November, when it was undisputed that Ives did not return his key to the apartment until 21 November 2005, and that Hanson's personal property remained in the premises as of that date. Third, Dr. Sciacca argues that the trial court erred as a matter of law in computing the attorneys' fees, when the lease set forth the formula for attorneys' fees as for either 25% of the amount claimed under the lease, or $300, whichever was greater.
*766 A lease agreement is a synallagmatic contract in which a lessor obligates himself/herself/itself to provide a thing in exchange for rent from the lessee for use of the thing for a certain term. La. C.C. art. 2668. Under a lease agreement, a lessor has three principal obligations:
1) To deliver the thing to the lessee;
2) To maintain the thing in a condition suitable for the purpose of which it was leased; and
3) To protect the lessee's peaceful possession for the duration of the lease.
La. C.C. art. 2682 (in pertinent part). Correspondingly, a lessee's principal obligations are:
1) To pay the rent in accordance with the agreed terms;
2) To use the thing as a prudent administrator and in accordance with the purpose for which it was leased; and
3) To return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter.
La. C.C. art. 2683 (in pertinent part). If a lessee fails to pay the rent in the amount and manner agreed upon, a lessor is entitled to dissolve the lease agreement and dispossess the lessee of the property. La. C.C. art. 2704.
First we look to whether the trial court erred in awarding Dr. Sciacca only one-half of the monthly rent for the month of October, when she maintains she received only partial rent, which she refused to accept at the time, ostensibly to protect her legal posture for this case. It is undisputed that Ives did not tender a rent check to Dr. Sciacca for the month of October. Instead, he asked her to re-submit a check he had written months earlier to cover his portion of the security deposit, but which had been returned for insufficient funds. Dr. Sciacca had, by her own testimony, already voided that check and rendered it non-negotiable; there is no testimony that Ives ever replaced it with another check or form of payment for the October rent.
It is also undisputed that Dr. Sciacca did receive a check from Hanson, which she refused to negotiate because she feared that acceptance of partial rent would subject her to a jurisprudential rule that would diminish her ability to evict Ives and Hanson at some future date. See, e.g., Versailles Arms Apartments v. Pete, 545 So.2d 1193, 1195 (La.App. 4 Cir. 1989).[7] Thus, even though Dr. Sciacca received Hanson's check for one-half of the rent for October, she did not accept the payment and returned the check to Ives.
The Louisiana Civil Code provides that "an obligation is solidary for the obligors when each obligor is liable for the whole performance." La. C.C. art. 1794. Dr. Sciacca maintains that under the terms of the lease, the rent obligation is solidary between Hanson and Ives, and the lease agreement supports her assertion. Therefore, she maintains that because she did not accept rent from Hanson, she is now entitled to recover the entire month's rent from Ives as Hanson's solidary co-obligor. There is no dispute that Dr. Sciacca received a rent check for October 2005 from Hanson, which she refused to negotiate. However, her refusal to negotiate Hanson's check renders Ives liable for the entire rent payment for the month of October as her solidary co-obligor. Therefore, *767 the trial court committed legal error in failing to find Ives liable for the entire month's rent, which would be $1,350.00 under the lease agreement.
Next, Dr. Sciacca takes issue with the trial court's finding that Ives was not liable for any November rent because he was denied access to the apartment to move out the furniture therein. The trial court does not elaborate on its reasoning behind this finding, but given the contradictory testimony in this case, it is clear that the trial court made a credibility determination in favor of Ives. It is axiomatic that an appellate court may not disturb a reasonable factual finding based upon a credibility determination. Stobart v. State through Dept. of Transportation & Dev., 617 So.2d 880, 882 (La.1993). As a court of appeal, we must not disturb any finding of fact that is not clearly wrong or manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989). In the present case, there is no evidence to directly contradict Ives' claim that he could not access the back gate to move the furniture other than the testimony of Dr. Sciacca. However, she even admits in her testimony that she was aware that he needed her to open the gate for him, and that she refused to lend him a key or to leave it open without her direct supervision. It is not clear from the testimony of either party the reason for the delay in the two meeting to move out the furniture until late November. What is clear is that by late October, both parties wanted to dissolve the lease, as evidenced by Ives finding another apartment, and Dr. Sciacca delivering Ives and Hanson the "Notice to Vacate." The record on appeal does not provide sufficient evidence to render the trial court's finding of fact on this issue unreasonable, clearly wrong, or manifestly erroneous.
We affirm the court's ruling that Ives and Hanson did not owe rent for November 2005, insofar as we affirm the finding that Ives was denied access to the apartment necessary to move his (or Hanson's) belongings out. As we find Ives liable for the October rent in its full amount as a solidary obligor, we modify the award of back rent to $1,350.00. We also amend the attorneys' fee award to comport with the terms of the lease agreement. As the lease agreement specifically sets forth the attorneys' fee award as 25% of the amount sought, or $300.00, whichever is greater, we increase the attorneys' fee award to $337.50, which is 25% of $1,350.00. Therefore, the judgment in favor of Dr. Sciacca is amended to $1,777.50, plus costs and legal interest from the date of judicial demand.[8]
For the foregoing reasons, the judgment of the trial court is amended in part, affirmed in part, and reversed in part.
AMENDED IN PART; AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] The lease shows her name as spelled "Hansen", however, in other pleadings throughout, her name is spelled "Hanson." For consistency, we elect to spell her name "Hanson."
[2] The written lease between the parties does not specifically state the address of the leased premises; however, the record discloses no dispute as to the location of the precise leased premises.
[3] However, Dr. Sciacca specifically did not seek rent for September 2005 in her petition for damages "in light of Hurricane Katrina and Hurricane Rita."
[4] Hanson did not appear at the trial, and it appears that Dr. Sciacca has not elected to proceed against Hanson, even though she has not been formally dismissed from the suit.
[5] His testimony is inconsistent as to whether this was in late September or early October. However, we note that the judgment in this matter suggests that the trial court made a factual finding that he took possession of the apartment on 28 September 2005, incurring liability for two days' rent.
[6] Also, it is also undisputed that a check written by Ives in the amount of $350.00 for a pet deposit was returned for insufficient funds.
[7] Under the rule, a lessor may be estopped from strictly enforcing the terms of the lease agreement pertaining to payment of rent if he or she has "lulled the lessee into a false sense of security" by accepting the rent in a manner other than that originally agreed upon. Id.
[8] Although we note that Dr. Sciacca asserted in her petition for damages that she was not seeking rent for the month of September, that portion of the judgment has not been targeted as an issue on appeal, and we incorporate the $90.00 into the judgment amount.